# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| JOEL FIELD, Individually and For Others Similarly Situated, | **Case No. 4:20-cv-00575** |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| ANADARKO PETROLEUM CORPORATION | |
| Defendant. | |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Joel Field (Field) brings this lawsuit to recover unpaid overtime wages and other damages from Anadarko Petroleum Corporation (Anadarko) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq.*

2.      Field worked for Anadarko as a Completions Consultant from approximately June 2017 through May 2018.

3.      Field and the other similarly situated workers who worked for Anadarko in the last three years regularly worked more than 40 hours a week.

4.      But these workers never received overtime for the hours they worked in excess of 40 hours in a single workweek.

5.      Instead of receiving overtime as required by the FLSA, Anadarko classified Field and other similarly situated workers as independent contractors and paid these workers a flat amount for each day worked (a day-rate) without overtime compensation.

6.      Neither Field, nor any other similarly situated workers who worked for Anadarko and received a day-rate, received a guaranteed salary.

7.      This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper under 28 U.S.C. § 1391(b).

10.     Anadarko conducts substantial business operations in this District and Division.

11.     Anadarko's corporate headquarters are located in this District and Division.

### PARTIES

12.     Field worked for Anadarko as a Completions Consultant from approximately June 2017 until May 2018.

13.     Throughout his employment with Anadarko, Field was classified as an independent contractor and paid a day-rate with no overtime compensation.

14.     Field's relationship with Anadarko was an employer/employee relationship.

15.     Field's written consent is attached as Exhibit A.

16.     Field brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Anadarko's day-rate system.

17.     Although these workers regularly worked more than 40 hours each week, Anadarko paid these workers a flat amount for each day worked and with no overtime compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

18.     The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All Drilling and Completions Consultants, employed by, or working on behalf of, Anadarko Petroleum Corporation who were classified as independent contractors and paid a day-rate with no overtime at any time during the past three (3) years** (the Putative Class Members).

19.     The Putative Class Members are easily ascertainable from Anadarko's business and personnel records.

20.     Anadarko is a Delaware corporation and may be served by serving its registered agent for service of process, **C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201**, or wherever it may be found.

### COVERAGE UNDER THE FLSA

21.     At all relevant times, Anadarko has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

22.     At all relevant times, Anadarko has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

23.     At all relevant times, Anadarko has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). Anadarko has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and oilfield equipment - that have been moved in or produced for commerce.

24.     In each of the last three years, Anadarko has had annual gross volume of sales made or business done of at least $1,000,000.

25.     At all relevant times, Field and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

26.     Anadarko treated Field and the Putative Class Members as employees and uniformly dictated the pay practices applied to Field and the Putative Class Members.

27.     Anadarko's misclassification of Field and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA.

28.     Anadarko's uniform day-rate scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

29.     Occidental Petroleum Corporation acquired Anadarko in 2019.

30.     Prior to this acquisition, Anadarko was one of the largest independent oil and natural gas exploration and production companies in the world, operating throughout the United States, including in Texas.

31.     To provide these services, Anadarko hired oilfield personnel (like Field) to work on its behalf, including Drilling and Completions Consultants.

32.     Anadarko classified many of these workers (including Field and the Putative Class Members) as independent contractors.

33.     But Anadarko did not hire these workers on a project-by-project basis.

34.     Rather, Anadarko hired and treated these workers just like regular, even if sometimes short-term, employees.

35.     During the relevant period, these workers regularly worked for Anadarko in excess of 40 hours a week for weeks at a time.

36.     During the relevant period, these workers worked for Anadarko on a day-rate basis.

37.     During the relevant period, these workers were not paid overtime for the hours they worked for Anadarko in excess of 40 hours each week.

38.     These workers make up the proposed Putative Class.

39.     While exact job titles and job duties may differ, Anadarko subjected these workers to the same or similar illegal pay practices for similar work.

40.     For example, Field worked for Anadarko as a Completions Consultant from approximately June 2017 to May 2018 in Texas.

41.     Anadarko management-level employees interviewed Field for the Completions Consultant position directly.

42.     Anadarko management-level employees hired Field for the Completions Consultant position directly.

43.     After Anadarko hired Field, Anadarko required Field to contact and utilize a third-party staffing company as a payroll conduit for his work with Anadarko.

44.     Field reported directly to Anadarko management-level employees, including Anadarko Completions Foremen Buck Fields and Drew Rylander.

45.     Throughout his employment with Anadarko, Field regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Anadarko paid Field a day-rate for each day worked, regardless of how many hours he worked in a day or week.

46.     As a Completions Consultant, Field regularly worked more than 12 hours each day, often for weeks at a time.

47.     Field did not hire or fire employees.

48.     Field did not exercise discretion and judgment as to matters of significance.

49.     To the contrary, Field's work was governed entirely by Anadarko.

50.     The Putative Class Members performed the same general job duties performed by Field.

51.     The Putative Class Members worked the same or similar schedule worked by Field, regularly working more than 40 hours each week. Field's work schedule is typical of the Putative Class Members.

52.     During the relevant period, Anadarko classified Field and the Putative Class Members as independent contractors and paid them a day-rate basis with no overtime compensation.

53.     Field and the Putative Class Members never received a salary.

54.     If Field and the Putative Class Members did not work in a week, they did not receive a guaranteed amount of at least $455.

55.     Field and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

56.     Without the job performed by Field and the Putative Class Members, Anadarko would not have been able to complete its business objectives.

57.     Field and the Putative Class Members were economically dependent on Anadarko and relied on Anadarko for work and compensation.

58.     Anadarko determined the amount and type of compensation paid to Field and the Putative Class Members.

59.     Anadarko set Field's and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for Anadarko.

60.     Field and the Putative Class Members worked in accordance with the schedule set by Anadarko.

61.     Anadarko prohibited Field and the Putative Class Members from subcontracting out the work they are assigned by Anadarko.

62.     Field and the Putative Class Members had to follow Anadarko's policies and procedures.

63.     Field and the Putative Class Members' had to adhere to the quality standards put in place by Anadarko.

64.     Field and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, Anadarko provided Field and the Putative Class Members with the equipment, programs, and facilities necessary for them to perform the work required of them.

65.     Field and the Putative Class Members did not provide the significant equipment and programs they worked with daily, such as the oilfield equipment, office space, computers, and other necessary equipment.

66.     Anadarko made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Field and the Putative Class Members work.

67.     Field and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

68.     Field and the Putative Class Members did not market their services while employed by Anadarko.

69.     While employed by Anadarko, Field and the Putative Class Members worked exclusively for Anadarko.

70.     Anadarko set Field's and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Anadarko.

71.     At all relevant times, Anadarko maintained control, oversight, and direction of Field and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

72.     Anadarko controlled Field's and the Putative Class Members' pay.

73.     Likewise, Anadarko controlled Field's and the Putative Class Members' work.

74.     Field's and the Putative Class Members' work had to adhere to the quality standards put in place by Anadarko.

75.     Field and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

76.     Anadarko knew Field and the Putative Class Members regularly worked for 12 or more hours a day for weeks at a time.

77.     Anadarko's records reflect the fact that Field and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

78.     Field and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Field and the Putative Class Members were paid on a day-rate basis.

79.     Anadarko set these workers' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and Anadarko's policies and procedures.

80.     The work Field and the Putative Class Members performed was an essential part of Anadarko's core businesses.

81.     Anadarko controlled Field's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

82.     Anadarko controlled all the significant or meaningful aspects of the job duties Field and the Putative Class Members performed by requiring them to strictly adhere to Anadarko's directives, policies, and procedures.

83.     Anadarko exercised control over the hours and locations Field and the Putative Class Members worked, the tools and equipment they used, the data they analyzed, and the rates of pay they received.

84.     Even though Field and the Putative Class Members may have worked away from Anadarko's offices without the constant presence of Anadarko supervisors, Anadarko still controlled

- 8 -

significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

85.     Very little skill, training, or initiative was required of Field and the Putative Class Members to perform their job duties.

86.     Indeed, the daily and weekly activities of Field and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Anadarko.

87.     Virtually every job function was predetermined by Anadarko, including the tools and equipment used, the data to review and compile, the schedule of work, and related work duties.

88.     Anadarko prohibited Field and the Putative Class Members from varying their job duties outside of predetermined parameters and required Field and the Putative Class Members to follow Anadarko's policies, procedures, and directives.

89.     Field and the Putative Class Members performed routine job duties largely dictated by Anadarko.

90.     All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

91.     All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

92.     All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 84 hours in a workweek.

93.     Anadarko uniformly denied Field and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

94.     Field and the Putative Class Members were not employed on a salary basis.

95.     Field and the Putative Class Members did not, and never did, receive guaranteed weekly compensation of at least $455 irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

96.     Anadarko's day-rate policy violated the FLSA because it deprived Field and the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

97.     Anadarko knew Field and the Putative Class Members worked more than 40 hours in a week.

98.     Anadarko knew, or showed reckless disregard for whether, Field and the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

99.     Anadarko knew, or showed reckless disregard for whether, Field and the Putative Class Members were not exempt from the FLSA's overtime provisions.

100.    Nonetheless, Field and the Putative Class Members were not paid overtime.

101.    Anadarko knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

102.    Field brings this claim as a collective action under the FLSA.

103.    The Putative Class Members were victimized by Anadarko's pattern, practice, and/or policy which was in willful violation of the FLSA.

104.    Other Putative Class Members worked with Field and indicated they were classified and paid in the same manner (as independent contractors paid a day-rate with no overtime) and performed similar work.

105.    Based on his experiences with Anadarko, Field is aware that Anadarko's illegal practices were imposed on the Putative Class Members.

106.    The Putative Class Members are similarly situated in all relevant respects.

107.    The Putative Class Members are blue-collar workers.

108.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

109.    The illegal day-rate policy that Anadarko imposed on Field was likewise imposed on all Putative Class Members.

110.    Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA.

111.    The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

112.    The overtime owed to Field and the Putative Class Members will be calculated using the same records and using the same formula.

113.    Field's experiences are therefore typical of the experiences of the Putative Class Members.

114.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

115.    Field has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

116.    Like each Putative Class Member, Field has an interest in obtaining the unpaid overtime wages owed under federal law.

117.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

118.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Anadarko will reap the unjust benefits of violating the FLSA.

119.    Further, even if some of the Putative Class Members could afford individual litigation against Anadarko, it would be unduly burdensome to the judicial system.

120. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

121. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

122. Among the common questions of law and fact are:

    a. Whether Anadarko employed the Putative Class Members within the meaning of the FLSA;

    b. Whether Anadarko's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

    c. Whether Anadarko's violation of the FLSA was willful; and

    d. Whether Anadarko's illegal pay practice applied to the Putative Class Members.

123. Field and the Putative Class Members sustained damages arising out of Anadarko's illegal and uniform employment policy.

124. Field knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

125. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Anadarko's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

126. Anadarko is liable under the FLSA for failing to pay overtime to Field and the Putative Class Members.

127. Consistent with Anadarko's illegal day-rate policy, Field and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

128.     As part of its regular business practices, Anadarko intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Field and the Putative Class Members.

129.     Anadarko's illegal day-rate policy deprived Field and the Putative Class Members of the premium overtime wages they were owed under federal law.

130.     Anadarko was aware, or should have been aware, that the FLSA required it to pay Field and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

131.     There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

132.     This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

133.     Those similarly situated employees are known to Anadarko, are readily identifiable, and can be located through Anadarko's records.

## CAUSE OF ACTION
## VIOLATION OF THE FLSA

134.     Field realleges and incorporates by reference all allegations in preceding paragraphs.

135.     Field brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

136.     Anadarko violated, and is violating, the FLSA by failing to pay Field and the Putative Class Members overtime.

137.     Anadarko misclassified Field and Putative Class Members for purposes of the FLSA overtime requirements.

138.     Field and the Putative Class Members were Anadarko's employees for purposes of the FLSA overtime requirements.

139.   Anadarko was Field's and the Putative Class Members' employer under the FLSA. Anadarko suffered or permitted Field and the Putative Class Members to work for or on its behalf during the relevant period.

140.   Anadarko cannot meet its burden to demonstrate Field and Putative Class Members are exempt from overtime under the administrative exemption.

141.   Anadarko cannot meet its burden to demonstrate the Field and Putative Class Members are exempt from overtime under the executive exemption.

142.   Anadarko cannot meet its burden to demonstrate Field and Putative Class Members are exempt from overtime under the professional exemption.

143.   Anadarko cannot meet its burden to demonstrate Field and Putative Class Members are exempt from overtime under the highly compensated exemption.

144.   Anadarko misclassified Field and the Putative Class Members as independent contractors.

145.   Anadarko failed to guarantee Field and the Putative Class Members a salary.

146.   Anadarko failed to pay Field and the Putative Class Members overtime.

147.   Anadarko paid Field and the Putative Class Members a day-rate.

148.   Anadarko knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Field and the Putative Class Members overtime compensation.

149.   Anadarko's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

150.   Accordingly, Field and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

151.   Field demands a trial by jury.

**PRAYER**

WHEREFORE, Field, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

    a.  An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

    b.  A judgment against Anadarko awarding Field and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

    c.  Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

    d.  An order awarding attorneys' fees, costs, and expenses;

    e.  Pre- and post-judgment interest at the highest applicable rates; and

    f.  Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Lindsay R. Itkin**
Texas Bar No. 24068647
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
litkin@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Attorneys for Plaintiffs**